.William H. Harding, Respondent, *v.* Daniel B. Cava-naugh, Appellant.     .

(County Court, Onondaga County, August, 1915.)

Automobiles — collision with horse and wagon at unlighted street inter-section — negligence — evidence — Second Class Cities Law, § 30.

The evidence in an action for damages to plaintiff's auto-mobile which collided with defendant's horse attached to a wagon at an unlighted street intersection on a dark night, con-sidered, and held, that the questions of defendant's negligence and of plaintiff's freedom from contributory negligence were properly submitted to the jury and that its verdict in favor of plaintiff was not contrary to the weight of evidence.

Where the accident occurred in a city of the second class the admission in evidence over defendant's objection of a traffic rule or regulation adopted by the commissioner of public safety of the city reading as follows: "All vehicles shall exhibit during the period from one hour after sunset to one hour before sunrise, on the left side of the vehicle, a white light visible within a reasonable distance in front of such vehicle, and a red light, visible within a reasonable distance, in the rear thereof," calls for the reversal of the judgment in favor of plaintiff on the ground that by section 30 of the Second Class Cities Law (Laws of 1909, chap. 55) the power to make such regulation is exclusively within the power of the common council.

Appeal from a judgment of the Municipal Court of the city of Syracuse entered upon a verdict in favor of the plaintiff and from an order denying a motion for a new trial.

Gannon, Spencer & Michell, for appellant.

Goodelle & Harding, for respondent.

Coville, J.   From the evidence in this case, the jury could find that the plaintiff was driving his automobile southerly on the westerly side of University avenue on

the evening of October 18, 1912, at a rate not exceeding five or six miles an hour and with the oil lamps in front lighted; that it was very dark and that there were no street lights lighted at the intersection of University avenue with Madison street, which runs east and west crossing the avenue at right angles; that upon approaching the intersection he looked both ways upon Madison street but did not see any team or conveyance; that just past the line of the curb of Madison street he saw the front part of a horse as it came in range of the oil lamps of the automobile and about two feet in front of the machine, it being so dark that he could not see the wagon; that plaintiff's automobile struck the horse and was damaged by the collision and that the plaintiff used every effort to stop his car after the horse became visible but was unable to do so.

Under these facts, the questions of the defendant's negligence and the plaintiff's freedom from contributory negligence were properly submitted to the jury and its verdict was not contrary to the weight of evidence.

I am of the opinion, however, that the judgment should be reversed by reason of the admission in evidence over the defendant's objection of a traffic rule or regulation adopted by the commissioner of public safety of the city of Syracuse and which reads as follows: "All vehicles shall exhibit during the period from one hour after sunset to one hour before sunrise, on the left side of the vehicle, a white light visible within a reasonable distance in front of such vehicle, and a red light, visible within a reasonable distance, in the rear thereof."

It will readily be perceived that under the circumstances of this case the admission of this evidence was of great importance to the plaintiff and the error in its reception, if any, was substantial. If this rule or

regulation could be considered as a valid municipal ordinance, it would, of course, be competent evidence to be considered by the jury as bearing upon the negligence of the defendant. *Fluker* v. *Zeigele Brewing Co.,* 201 N. Y. 40.

Such ordinances seem to be admissible in negligence cases upon the theory that they have the effect of statute law within the territory affected and a violation thereof is at least some evidence of negligence and for the further and more tangible reason that " every person pursuing his lawful affairs in a lawful way has a right to assume, and act upon the assumption, that every other person will do the same thing.". *Jetter* v. *New York & Harlem R. R. Co.,* 2 Keyes, 154, 163.

On principle, this reasoning ought not to be extended to cases of rules and regulations which are made without formality or publicity.

There seems to be no decision of our courts at all decisive upon the question of the authority of the commissioner of public safety to adopt a rule or regulation of this kind. By section 30 of the Second Class Cities Law, the legislative power of the city is expressly vested in the common council and that body is given authority to enact ordinances for the government of the city, for the safety and welfare of its inhabitants and the protection and security of their property. Clearly this gives the common council authority to enact ordinances of the general character of the one in question and an ordinance of this kind so far reaching as to apply to all vehicles upon the city streets would seem to be legislative in its nature and therefore exclusively within the power of the common council.

Unquestionably the legislature could have given this power to the commissioner of public safety. *Wilcox* v. *McClellan,* 185 N. Y. 9; *People ex rel. Cox* v. *Special Sessions,* 7 Hun, 214.

33

However, the common council is the body naturally and ordinarily vested with such authority and under section 30 that authority remains in it unless clearly taken away and vested in some other person or body. Section 131 of the above statute provides that the commissioner of public safety shall have supervision and control of the government, administration and discipline of the police department, fire department, building department and health department and shall possess and exercise fully and exclusively all powers and perform all duties pertaining to the government, maintenance and direction of said departments; and section 133 provides that he " shall make, adopt and enforce such reasonable rules, orders and regulations not inconsistent with law as may be reasonably necessary to affect a prompt and efficient exercise of all the powers conferred and the performance of all duties imposed by law upon him or the department under his jurisdiction." His office is principally administrative, he is nowhere expressly given authority to enact general ordinances of a legislative nature and in fact the only jurisdiction given to him over the city streets and the persons thereon must apparently be inferred from the fact that he is given control of the police department, whose primary duty is to enforce, rather than make, laws and ordinances. No formalities are provided for the adoption of such rules and regulations as he may make or for their record or publication.

As stated above it is clear that under section 30, the common council is given authority to enact ordinances of this character, and it is reasonable to assume that the legislature did not intend that the ordinance making power of the common council and the commissioner of public safety should conflict. The logical and practical interpretation of section 30 and section 133 is to hold that the common council shall make all ordinances

" for the safety and welfare of its inhabitants and the protection and security of their property," etc., and that the commissioner of public safety shall enforce the same, and shall also make and enforce all such rules and regulations of an administrative nature as may be reasonably required for the enforcement of such ordinances and of the laws applying to his department.

The expression found in section 42 in relation to ordinances of the commissioner of public safety is not inconsistent with this interpretation. It may be that the common council has in some way formally adopted the rules and regulations of the commissioner of public safety and practically made them its own ordinances. Such fact, if it exists, is not in evidence and judicial notice could not be taken of it.

I therefore hold that the admission in evidence of this rule or regulation was error for which the judgment must be reversed.

Judgment and order denying motion for a new trial reversed and a new trial ordered in the Municipal Court on September 10, 1915, with costs to the appellant to be adjusted in the subsequent judgment in said court.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.