PORTER v. MUNICIPAL GAS CO. OF CITY OF ALBANY. (No. 293/128.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. APPEAL AND ERROR ☞999—REVIEW—QUESTIONS OF FACT.

In an action for injuries sustained by a person compelled to jump from a burning building because of the inability of the firemen to raise an aerial ladder, where eyewitnesses testified positively that the elevation of the ladder was prevented by defendant's electric light wires, there was a question of fact, and the appellate court would not interfere with the jury's finding, though defendant attempted to demonstrate, by means of exact measurements in connection with testimony as to the exact position of the fire truck, its wires, and the wires of a trolley company, that the ladder did not come in contact with its wires, but that it was the trolley wires that obstructed the ladder.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912-3921, 3923, 3924; Dec. Dig. ☞999.]

2. ELECTRICITY ☞19—PERSONAL INJURY—STREETS—OBSTRUCTIONS—LIABILITY.

In such action, an ordinance requiring defendant to remove its wires then in the streets of the city and place them underground, subject to the approval of the commissioner of public works, and defendant's disregard thereof, were provable for the consideration of the jury in connection with the other facts, but did not, standing alone, impose any liability on defendant, especially where it appeared that the city had in contemplation extensive improvements in the particular vicinity, as a result

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of which the wires had not been placed underground, and that, though defendant was ready to proceed to place them underground and had requested plans of the improvement, in order that it could make plans to lay the underground wires, the commissioner of public works had not furnished such plans and never advised defendant where to locate the conduits.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. ☞19.]

3. CONSTITUTIONAL LAW ☞134—STREETS—USE BY ELECTRIC LIGHT COMPANY —IMPAIRMENT OF OBLIGATION OF CONTRACT.

Where a grant of the right to erect poles, wires, etc., for the purpose of conducting electricity upon and along the streets of a city, provided that the grant was subject to any condition then or thereafter imposed by any ordinance of the city enacted in regard thereto, an ordinance requiring that such wires be placed underground was not an impairment of the obligation of the contract, within the state or federal Constitution, unless it was unreasonable.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 344; Dec. Dig. ☞134.]

4. ELECTRICITY ☞9—STREETS—USE BY ELECTRIC LIGHT COMPANY—IMPAIRMENT OF OBLIGATION OF CONTRACT.

Such ordinance was not unreasonable, where the party maintaining the wires in the streets was given considerable time in which to comply with it, and was never in fact forced to comply therewith.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 4; Dec. Dig. ☞9.]

5. ELECTRICITY ☞19—STREETS—INJURIES CAUSED BY OBSTRUCTIONS—QUESTIONS FOR JURY.

In an action for injuries to a person forced to jump from a burning building, because electric light wires strung diagonally across the street, prevented the firemen from raising an aerial ladder, though the electric light company was rightfully in the streets under a grant from the city, it was a question for the jury whether the maintenance of the wires at the point in question in the manner and at the height they were maintained, considering the height of the surrounding buildings, constituted negligence, as the company must have known that wires strung across the streets within a certain distance of the ground, would hinder and obstruct the elevation of tall ladders near high buildings.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. ☞19.]

Appeal from Trial Term, Albany County.

Action by John T. Porter against the Municipal Gas Company of the City of Albany. From a judgment for plaintiff for $10,000 damages and $225.13 costs, entered upon a verdict by a jury, and from an order denying defendant's motion for a new trial, defendant appeals. Affirmed.

See, also, 165 App. Div. 945, 150 N. Y. Supp. 1107.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Neile F. Towner, of Albany, for appellant.

Joseph A. Kellogg, of Glens Falls (Jenkins & Barker, of Glens Falls, of counsel), for respondent.

HOWARD, J. On October 7, 1912, and for some years previously thereto, the defendant had maintained a system of wires strung on

poles through the streets of the city of Albany. These wires were maintained for the purpose of transmitting electricity for lighting purposes. At the southeast corner of State street and Broadway stood a building known as the Fort Building. At or near the curb of State street, about 12 feet from the northwest corner of this building, stood an electric light pole of the defendant. Seven wires were strung from this pole diagonally across Broadway to another pole owned and maintained by the defendant. At the pole near the corner of the Fort Building these wires were 28½ feet from the ground, and they gradually rose to a higher elevation, until it reached the pole on the westerly side of Broadway, at which point they were 40 feet from the ground. Underneath these wires were other wires owned by the United Traction Company, 17 or 18 feet above the ground.

Late in the afternoon of October 7, 1913, a fire broke out at the Fort Building. The plaintiff, who was lawfully on the fourth floor of the building at the time, discovered the fire, and, finding that he could not escape by the stairs, went to the third window on Broadway south from State street, got out the window, and stood on the cap of the window below. Very soon the city fire department appeared on the scene with the usual engines and apparatus, among which was a truck with an "aerial" ladder. The firemen attempted to raise this ladder, so as to rescue the plaintiff from his position of peril; but the ladder was obstructed by something, and the plaintiff contends that it was the wires of the defendant. The firemen being unable to raise the ladder, the plaintiff at last jumped out, attempting to land in a net which was being held beneath him for that purpose; but he was not completely successful in this attempt, and landed on the edge of the net, bounding over on the outside of it to the ground, and was injured. He brings this action against the defendant, alleging negligence on its part in maintaining the wires in the position in which they were maintained, and in failing to remove its wires pursuant to an ordinance of the common council of the city of Albany commanding it to do so, passed April 16, 1906.

[1] The defendant in its proof undertook to locate the exact position of the defendant's wires, the position of the trolley wires, and the position of the truck, and then, after giving exact measurements of the height of the wires and the length of the truck and ladder, it has undertaken to prove, by what it styles a "mathematical demonstration," that the ladder did not come in contact with the wires of the defendant but did in fact come in contact with, and was obstructed by, the wires of the United Traction Company. In this manner the defendant has pitted theory and "mathematical demonstration" against the positive testimony of eyewitnesses, who saw the ladder and the wires, saw the whole transaction, and saw that it was the wires of the defendant which prevented the elevation of the aerial ladder. The jurors chose to accept the evidence of the witnesses rather than the theory of the defendant. We cannot say that they were in error in doing so. In fact, the testimony of the eyewitnesses is much more convincing to us than the "mathematical demonstration" of the defendant. At all

events, we are not disposed to interfere with the findings of the jury on this question of fact.

Assuming, then, that the ladder was in fact obstructed by the wires of the defendant, was the defendant negligent in maintaining them there in the position and under the circumstances described? The defendant's poles and wires were lawfully in the streets of Albany. It was exercising its rights under a franchise granted to it by an ordinance of the common council passed in June, 1896, and also pursuant to a contract entered into between it and the city of Albany in the same year. By virtue of said franchise and contract the defendant was granted permission to "erect and maintain poles, lamps, wires, or cables, and the other necessary appliances and apparatus for the purpose of conducting electricity * * * upon and along any of the streets or public places of the city of Albany." This franchise, under which the defendant maintained its poles and wires, was to an extent revoked, or at least modified, by a resolution of the common council passed April 16, 1906. By this resolution the defendant and all other persons and corporations, with certain exceptions, maintaining poles, wires, cables, etc., in the streets of the city of Albany, within a certain area, were commanded to remove the same and place the wires and cables underground.

[2] The plaintiff contends, first, that the defendant was negligent because it failed to observe this ordinance. The ordinance was properly received in evidence, and the disregard of it by the defendant, if it was disregarded, was a proper subject for consideration by the jury in connection with the other facts in the case. But, standing alone, this ordinance and the failure of the defendant to observe it were insufficient to create a liability on the part of the defendant. Fluker v. Ziegele Brewing Co., 201 N. Y. 40, 93 N. E. 1112, Ann. Cas. 1912A, 793. And the effect of this ordinance, so far as it relates to the situation here, was greatly minimized, if not entirely vitiated, by the subsequent action of the commissioner of public works. In passing the ordinance the common council required that the plans of all conduits and their location and the work done thereon should be approved by the commissioner of public works. For some time previous to the fire the city of Albany had under contemplation extensive improvements east of Broadway, in the immediate neighborhood of, and in fact including, the site of the Fort Building. As a result of this the wires in that vicinity had not yet been buried beneath the ground. Matters being in this condition, the general manager of the defendant went to the office of the commissioner of public works on May 24, 1911, and asked the commissioner to furnish him with the plans of the proposed improvement, so that the defendant could make plans to lay the underground wires; but the Commissioner advised the manager of the defendant that he could not do that, or give permission, because the city had made no plans. He said that he would advise the defendant later. He did not, however, advise it later, and has never advised the defendant where to locate the conduits, although the defendant was ready and equipped, as early as 1911, to go ahead with the work of

placing the wires under the ground. Therefore on the failure alone of the defendant to comply with the ordinance of April 16, 1906, we do not think this judgment can stand.

[3, 4] It is further contended by the defendant that the ordinance requiring the defendant to bury its wires underground impaired the obligation of the contract under which the defendant was operating, and was thus contrary to the state Constitution and to the federal Constitution. But in the contract itself is a provision that the grant to the defendant is made "subject, however, to any condition that may now or hereafter be imposed by any  *   *   *  ordinance of the city of Albany enacted in regard thereto." The contract having been accepted by the defendant on these conditions, unless the ordinance in question imposed an unreasonable condition, it did not impair the contract, because the right to enact the ordinance and impose the condition is recognized by the contract and is a part of it. In view of the length of time given to the defendant in which to comply with the conditions of the ordinance, and in view of the fact that the defendant was never in fact forced to comply with it, the ordinance cannot be declared unreasonable. It was in keeping with the march of progress, and must be held to have been reasonable, proper, and lawful.

[5] But on the general proposition that the position of the wires of the defendant in question constituted a dangerous situation a question was presented for the jury which we do not feel inclined to disturb. Although the defendant was rightfully in the streets of the city of Albany with its poles and wires, the question, nevertheless, arises whether they were being maintained properly and carefully or unlawfully and negligently. Lambert v. Westchester Electric R. R. Co., 191 N. Y. 248, 83 N. E. 977. The defendant well knew the modern processes of fighting fire. It knew the nature of the apparatus ordinarily employed on such occasions. It must have known that wires strung across the streets of the city within a certain distance of the ground would hinder and obstruct the erection of tall ladders near high buildings. Therefore it was for the jury to say, under all circumstances, whether the maintenance of these wires at the point in question, in the manner they were maintained, and at the height they were maintained, considering the height of the surrounding buildings, constituted negligence. The jury has determined that it was negligence, and under the ruling in Lambert v. Westchester, supra, it was for the jury to say.

We do not find any other question in the case which calls for comment, and we think that the judgment and order appealed from should be affirmed, with costs. All concur.